Packard Shirt Manufacturing Corporation v. Commissioner.
Packard Shirt Mfg. Corp. v. Commissioner
Docket No. 111860.
United States Tax Court
1943 Tax Ct. Memo LEXIS 162; 2 T.C.M. (CCH) 584; T.C.M. (RIA) 43385; August 6, 1943
*162 Gilbert W. Gambill, Esq., 613 Merchants Bank Bldg., Terre Haute, Ind., and S. D. Royse, Esq., 613 Merchants Bank Bldg., Terre Haute, Ind., for the petitioner. E. C. Adams, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in petitioner's income and excess-profits taxes for the calendar year 1937. That part of the deficiencies is in issue here which arises by reason of respondent's determination that petitioner is liable for the payment of certain surtaxes on undistributed profits. The principal question presented is whether petitioner is entitled to a dividends paid credit during the taxable year. Findings of Fact A stipulation of facts was filed, and the facts set forth therein are found to be facts in this case, and, together with other facts found from the evidence, are set forth here insofar as they are pertinent to this decision. The petitioner filed its corporate income tax return for the calendar year 1937 with the collector of internal revenue for the district of Indiana. The petitioner is a corporation, organized under the laws of the State of Indiana, and has its principal place of business in Terre Haute, *163 Indiana. In 1929, Bertram J. Hirsch and Edwin D. Wurmser were the principal stockholders of the Packard Manufacturing Co., an Illinois corporation engaged in the manufacture of shirts in Chicago. Prior to March 1, 1929, the Terre Haute Foundation, Inc., a corporation organized for the purpose of inducing business and industrial organizations to locate in Terre Haute, Indiana, solicited the Packard Manufacturing Co. to move from Chicago to Terre Haute; and proposed, as an inducement, to buy $25,000 worth of the preferred stock of an Indiana corporation to be organized to succeed the Illinois corporation and to carry on the business at Terre Haute. A representative of the Foundation was to be a director of the new Indiana corporation. The proposition was accepted, an Indiana corporation was organized with a common capital stock of 521 shares of a par value of $100 per share, and 250 shares of 6 percent preferred stock of a par value of $100 per share, and a representative of the Foundation was elected a director. The common stock was issued as follows: 326 shares to Bertram J. Hirsch 130 shares to Edwin D. Wurmser 65 shares to Lucille W. Hirsch (wife of Bertram J. Hirsch) and the *164 entire authorized issue of 250 shares of preferred stock was issued to the Terre Haute Foundation, Inc., for which it paid $25,000. The business proceeded satisfactorily until early in 1933, when it became necessary for Hirsch to lend the corporation $4,000, and for the Foundation to lend it $2,000. In August of that year, the Foundation loaned an additional $2,000, and Hirsch loaned an an additional $2,000. These debts were evidenced by demand notes of the corporation. The business of the company became worse, and early in 1934, Hirsch reported to the board of directors that the company could not continue to do business as a going concern; its liabilities were in excess of its assets, its credit was gone, and it faced the alternative of liquidation in bankruptcy, or reorganization. A reorganization was decided upon, and on February 24, 1934, the company transferred all its property and assets to a trustee, for liquidation or to carry out the plan of reorganization. The reorganization plan comprehended the organization of a new corporation having a capital stock of 485 shares, consisting of 125 shares of 6 percent preferred stock of a par value of $100, and 360 shares of common *165 capital stock of no par value. All of the preferred stock and 120 shares of the common stock were to be issued to the Foundation, and 240 shares of the common stock were to be issued to the holders of the common stock of the old corporation. The new corporation was to take over the assets and business of the old, and was to pay to Hirsch the sum of $3,850, upon the payment and satisfaction by Hirsch of all of the indebtedness of the old corporation, and upon condition that Hirsch and the Foundation should release and discharge the indebtedness due them by the old corporation. The plan was carried out, and the new corporation, known as Packard Shirt Manufacturing Corporation, was formed. The preferred stock provided that no dividends should be declared upon the common stock, nor should any of the common stock be purchased or redeemed or otherwise acquired by the corporation for a consideration, while any dividends remained due and unpaid on the preferred stock. The article of incorporation authorized redemption of the preferred stock, and provided that none of the preferred stock so redeemed should be reissued and none should be issued in lieu thereof or in exchange therefor. The entire *166 issue of preferred stock and 120 shares of the common stock were issued to the Foundation and the remainder of common stock was divided as follows: 100 shares to Bertram J. Hirsch 100 shares to Edwin D. Wurmser 40 shares to Lucille W. Hirsch On February 28, 1934, Hirsch and the Foundation entered into a contract which was a part of the plan of reorganization and which provided briefly but substantially, that each was to cancel and satisfy the indebtedness of the old company; that Hirsch was to pay and satisfy all indebtedness of the old company due to certain creditors, in consideration of the payment to him by the new corporation of $3,850, and the issuance to him of 240 shares of the common stock; that the Foundation was to cancel and satisfy its claim against the property and assets of the old corporation by reason of its ownership of the preferred stock thereof; and to accept as full consideration for its agreements and promises 125 shares of the cumulative 6 percent preferred stock and 120 shares of no par value common stock of the new corporation, and further provided that the Foundation * * * agrees that whenever it shall have received from said new corporation either *167 by way of dividends or by redemption or purchase of the stock of said new corporation owned by Second Party (the Foundation) the sum of $29,000, said Second Party will surrender to said new corporation all of the preferred and common capital stock of said new corporation issued to said Second Party, and Second Party agrees that it will not assign or transfer said capital stock, or any part thereof, during the period of Ten (10) years from the date of the issuance thereof. This contract was incorporated in the minute book of the corporation coincident with the formation of the new corporation. In petitioner's corporate minute book, this contract was referred to in 1939 as a contract entered into between this corporation and the Terre Haute Foundation, Inc. The balance sheet of the old company on February 28, 1934, the date upon which it ceased operations, was as follows: PACKARD SHIRT MFG. COMPANY
TERRE HAUTE, INDIANA
BALANCE SHEET
February 28, 1934
(Date this Corporation ceased operation)
ASSETS
CURRENT ASSETS
Petty Cash
$ 15.23
Terre Haute First Nat. Bank
2,476.03
First Natl. Bk. of Chicago
92.53
$ 2,583.79
Postage Stamps
36.35
Accounts Receivable
2,146.89
Inventory
11,764.24
$16,531.27
FIXED ASSETS
Furniture and Fixtures
5,896.20
Machinery and Equipment
10,239.30
TOTAL
16,135.50
Less Reserve for Depreciation
13,043.65
3,091.85
OTHER ASSETS
Salesmen's Lists
1,000.00
$20,623.12
LIABILITIES
CURRENT LIABILITIES
Accounts Payable
$ 7,728.28
Notes Payable - Banks
$7,000.00
Notes Payable - T. H. Foundation Inc.
4,000.00
Notes Payable - Officers
6,000.00
17,000.00
Accrued Expense (Taxes, etc.)
1,117.24
$25,845.52
NET WORTH
Preferred Stock Paid in
25,000.00
Common Stock Paid in
52,100.00
Surplus Stock Paid in
720.04
77,820.04
Deficit from Operations
83,042.44
5,222.40
Net Deficit
$20,623.12
*168 The balance sheet of the new corporation on the first day of its existence, March 1, 1934, was as follows: PACKARD SHIRT MANUFACTURING CORPORATION
BALANCE SHEET, MARCH 1, 1934
Assets same as 2-28-34 (old company)
$20,726.98
Add to machinery and equipment
2,033.95
Add to cash value life insurance
269.46
Reduce furniture and fixtures
(1,125.80)
$21,904.59
Liabilities: Miscellaneous accounts payable 2-29-34
1,645.19
Accounts receivable credit balance 2-28-34
103.86
Accrued taxes 2-28-34
616.15
Reserve for bad debts
501.09
Accounts payable Cohn Hall Marx & Chicago Bank of old company assumed
3,850.00
Preferred stock (par value)
12,500.00
Common stock (no par value)
2,688.30
$21,904.59
The corporation paid no dividends in 1934 or 1935. It adopted resolutions declaring as dividends, and distributed the following amounts during 1936, 1937, 1938 and 1939: Other
Foundation
Stockholders
1-20-36
Preferred $11 per share
$ 1,375.00
1-20-36
Common
10 per share
1,200.00
$ 2,400.00
7-16-36
Preferred
3 per share
375.00
7-16-36
Common
20 per share
2,400.00
4,800.00
12- 1-36
Preferred
3 per share
375.00
12- 1-36
Common
20 per share
2,400.00
4,800.00
12- 1-36
Common
15 per share
1,800.00
3,600.00
9-28-37
Preferred
6 per share
750.00
9-28-37
Common
10 per share
1,200.00
2,400.00
12- 3-37
Common
15 per share
1,800.00
3,600.00
12- 3-37
Common
40 per share
4,800.00 *
9,600.00 *
12-30-38
Preferred
6 per share
750.00
12-30-38
Common
15 per share
1,800.00
3,600.00
4- 6-39
Common
20 per share
2,400.00
4,800.00
4- 6-39
Common
30 per share
3,600.00
7,200.00
12- 9-39
Preferred
6 per share
750.00
12- 9-39
Common
10.21 per share
1,225.20
2,450.40
$29,000.20
$49,250.40
*169 The resolutions declaring the several cash dividends conformed in all material respects to the following general form: "Be it resolved that as of the day of , 19 , a dividend of $ per share be and the same is hereby declared on the common capital (or preferred) stock of the company, such dividend to be payable immediately." The books of the corporation show the following profits as a result of its operation from 1934 through 1940: Year
Profit
1934
$ 8,442.06
1935
10,937.94
1936
26,657.02
1937
31,258.44
1938
13,491.06
1939
23,799.27
1940
17,580.97
The petitioner and its stockholders other than Foundation, treated the distributions as dividends. The Foundation set up on its books in 1929 a general ledger account showing the purchase of the preferred stock, debiting the item of $25,000 and a later item of $129.94, unexplained by the record, and thereafter, beginning in 1936, credited against that *170 sum each and every payment received by it from the petitioner, labeling them "liquidating dividends." When the total of such receipts reached $25,129.94, and that account was balanced, all further payments of every kind were thereafter credited against a ledger account headed "Notes Receivable - Loans" set up January 10, 1933, of the $4,000 debt of the old company. This debt had been charged off as worthless, and the Foundation had claimed and received a deduction as a worthless debt in its 1933 income tax return. In 1939, the account was "reinstated" in the ledger sheet and all remaining receipts of 1939 now denominated "payment on notes" and "balance on 2 notes" were credited to that account. When it was balanced, the stock was surrendered, in accordance with the terms of the 1934 contract. The preferred stock was cancelled and retired, and the common stock was re-issued to the other stockholders, as stock dividends, in proportion to their holdings. The recovery of the $4,000 was duly reported in the Foundation's income tax return for 1939. Petitioner, upon its Federal tax return for 1937, reported (a) net income of $26,820.04, (b) excess profits tax of $393.63, and (c) income (normal) *171 tax of $3,075.43. Said $26,820.04 reduced by the income (normal) and excess profits taxes results in an income per return of $23,350.98 subject to surtax on undistributed profits in the absence of any credit for dividends paid, etc. Petitioner on its return made claim for a credit of said amount ($23,350.98) as and for dividends paid in 1937 and reported no surtax liability. The credit claimed for dividends paid in 1937, as computed by petitioner, is made up of the following items: Dividend declaration dated September 28, 1937 $ $ 6.00 per share on 125 shares preferred stock
$ 750.00 $ 10.00 per share on 360 shares common stock
3,600.00
$ 4,350.00
Dividend declaration dated December 3, 1937 $15 per share payable in cash on 360 shares common stock
$ 5,400.00
$40.00 per share payable in five-year 4% debentures computed at full face
value thereof on 360 shares common stock
14,400.00
19,800.00
Total credit applied (as offset to $23,350.98 supra)
$24,150.00
The Commissioner, after making adjustments to income not here in controversy, disallowed any credit for dividends paid in computing surtax on undistributed profits. The distributions made by petitioner *172 in 1937 to its shareholders were ordinary dividends. On December 3, 1937 petitioner declared a dividend of $40 per share on each share of the outstanding common stock as of November 1, 1937, to be paid in debentures of the corporation, dated December 15, 1937, payable 5 years after date, bearing interest at 4 percent, callable at any time, upon notice, at par plus accrued interest. Such debentures were thereupon issued to the shareholders in the following face amounts: Foundation
120 shares
$4,800
Hirsch
100 shares
4,000
E. D. Wurmser
100 shares
4,000
Lucille D. Hirsch
40 shares
1,600
Mr. and Mrs. Hirsch and Mr. Wurmser included the face value of the debentures in their respective taxable incomes for 1937, and paid taxes thereon. The Foundation credited its accounts with the face value of the debentures issued to it. The debentures were all redeemed in full by October of 1938. The fair market value of these debentures as of December 1937 is unknown. Opinion KERN, Judge: The issue which is properly presented for our determination in this case is as follows: Did the Commissioner err in denying to petitioner a dividends paid credit on account of certain pro *173 rata distributions of its earnings to its shareholders? The petitioner's position is that all of the distributions described in the Findings of Fact were ordinary dividends, paid, proratably out of earnings, to all its shareholders in each class alike, and that it is therefore entitled, under section 27 (a), to a credit for the total amount of such dividends paid by it during 1937. The respondent advances most vigorously several alternative contentions. He suggests, variously, that the true relationship between petitioner and the holder of all of its preferred stock, and one-third of its common stock, the Terre Haute Foundation, Inc., was that of debtor and creditor, and that the amounts paid it were really in satisfaction of a debt; that the payments were in redemption or liquidation of Foundation's stockholdings, pursuant to an agreement entered into at the time of the issuance of the stock between Foundation and an incorporator of petitioner; and that the distributions were made in purchase of the Foundation's holdings. In his determination of deficiency respondent held that "such payments represented capital expenditures for the purchase or redemption of such stock and that no *174 part of the amounts so paid was properly chargeable to * * * earnings or profits accumulated after February 28, 1913." No contention is made that the distributions made pursuant to the same resolutions to the other three stockholders are anything other than ordinary dividends, but credit for them is denied as a result of the denial of credit for payments to Foundation, on the theory that such payments to the other three shareholders then became preferential, and therefore not allowable by reason of the provisions of Sec. 27 (g) of the Act. The definition of "dividends" applicable to Title I of the Act, of which section 27 is part, is as follows: SEC. 115. DISTRIBUTIONS BY CORPORATIONS. (a) Definition of Dividend. - The term "dividend" when used in this title (except in section 203 (a)(3) and section 207 (c)(1), relating to insurance companies) means any distribution made by a corporation to its shareholders, whether in money or in other property, (1) out of its earnings or profits accumulated after February 28, 1913, or (2) out of the earnings or profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during *175 the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made. It is readily apparent that the distributions here involved fall squarely within that statutory definition. They were declared and paid as dividends, out of earnings, at the same rate to all stockholders in each class, and were generally regarded and treated by petitioner as dividends. If they are held not to be dividends, it must be because of the effect given them by reason of a separate contract entered into between one of the incorporators of petitioner and that distributee, before, but in contemplation of, the organization of petitioner, in which it was agreed that whenever that distributee should have received by way of dividends, purchase or redemption of its stock, the sum of $29,000 it would surrender its stock to the corporation. That condition was not met in the taxable year, and there was no assurance in that year, that it would ever be met. In 1939, however, the stock was surrendered, in accordance with that contract, the distributee having then received the sum of $29,000. All attempts to fit this situation into any orthodox legal mould are futile. It *176 was an altogether unique arrangement, and raises questions not easy to solution even though we observe the admonition so urgently stressed in respondent's brief of looking through form to the substance of the transaction. No one contends that the sum of $29,000 bore any relation to the value of the Foundation's stockholdings in petitioner corporation. It represented the exact cash outlay of the stockholder with respect to a predecessor corporation, of which sum $25,000 was paid for preferred stock and $4,000 was a loan, evidenced by promissory notes. The preferred stock became virtually worthless in 1933 or early in 1934, as a result of business reverses which led to that corporation's dissolution in 1934; and the debt of $4,000 was expressly cancelled in writing by Foundation prior to the organization of the corporation which is the petitioner here, and was charged off as a worthless debt by Foundation in 1933. In no respect, therefore, can it be said, and it is not contended by either party here, that the $29,000 payment of which was made the condition precedent to the surrender of the stock by Foundation, represented a legal liability or indebtedness of petitioner, and it was not *177 assumed by petitioner as such an indebtedness by the contract of 1934, which imposed no obligation on petitioner to pay any amount. Neither is it contended that the amount of $29,000 was an estimate of the value of Foundation's stock in petitioner, in such a way that payment of that amount by petitioner might be presumed or construed to be by way of redemption or purchase of the stock. It was simply the amount agreed upon by the parties to the contract, Foundation and Hirsch, as the sum which would exactly reimburse the Foundation for its expenditures in connection with the earlier corporation, and the Foundation's willingness to surrender the stock when it had been so reimbursed, without a profit, is readily explained by the nature of Foundation's activities, which was not, primarily, to make a profit on its investments, but to encourage and promote the industrial and business development of the city of Terre Haute. It wished to retain its interest in the new corporation for the purpose of recouping its investment, which would have been impossible if the old corporation had been liquidated; while Hirsch, who had assumed certain financial obligations toward the new corporation, was *178 willing to permit Foundation to retain some interest in the new corporation for this purpose, but only if, after its accomplishment, he and his own associates were assured of full stock ownership. Foundation's informal treatment of all the amounts which it received from petitioner, as credits against the amounts it had expended in connection with petitioner's predecessor, without respect to whether the receipts were dividends on preferred or common stock, or interest on debentures or in retirement of debenture dividends, is likewise traceable to the character and purpose of the organization, and, in any event, such treatment on the books of Foundation, in view of these special circumstances, is not particularly helpful in determining the real nature of the distributions. Foundation held all of the preferred stock, and dividends were paid thereon in strict accordance with its terms, at 6 per cent, no more, no less. It held one-third of the common stock, and at no time was a dividend ever paid on a share of that stock which was not also paid, in exactly the same amount on each share held by other shareholders. We do not feel that the fact that Foundation had agreed with Hirsch, under *179 a separate contract to give a special effect to all its receipts from petitioner, conditional upon events which occurred in a subsequent year, can convert as to petitioner these payments made in the taxable year into anything other than dividends. That contract was entirely separate from the stock contract, out of which these payments grew and by virtue of which petitioner made them. It, in fact, contemplated that some of the amounts received by Foundation would probably be dividends, and provided that when they, together with any sums received by way of purchase or redemption, totaled $29,000, it would surrender the stock. None of the stock was purchased or redeemed during all these years, in the usual sense, but in 1939, the amount received by Foundation reached $29,000, consisting of cash dividends, interest on debentures, and retirement of debentures, and the stock was surrendered. There was no assurance during 1937 that $29,000 would ever be paid, and until the entire amount was paid there was no obligation on Foundation's part to surrender a single share of stock. From the standpoint of petitioner's corporate organization, the matter is simple enough. It issued preferred stock *180 with ordinary preference provisions, and common stock. It declared and paid dividends on all its preferred stock in accordance with its terms, and on all the common stock alike, out of earnings. It is the peculiar nature of the Foundation's organization, the unusual contract of 1934, Foundation's informal manner of keeping records, and the ambiguous language of certain minutes of petitioner, which cast the cloud of confusion over the picture. The character of the Foundation itself is not comparable to the ordinary commercial corporation which invests in stock of another corporation; the bookkeeping system employed by Foundation with reference to its accounts with petitioner is a complete stranger to basic accounting principles; the contract of 1934 can not be characterized as a contract providing for or requiring redemption or purchase of its stock at any certain time, or under any certain circumstances, or at certain price; it was not a contract to make a gift to the corporation in the future; it did not require the payment of any dividends whatever. It was simply a contract by the Foundation to surrender its stock "whenever it shall have received * * * by way of dividends * * * *181 the sum of $29,000". It had received $29,000 by 1939 and it received it, so far as the portion received in 1937 is concerned, by way of dividends. It surrendered the stock in 1939. The petitioner is entitled to credit for the dividends so paid in 1937. Our holding that these distributions were ordinary dividends disposes of respondent's contention that they were preferential, within the meaning of section 27 (g); and that the dividend credit should be denied by reason of the distribution constituting, in the hands of Foundation, a non-taxable distribution; and that the distribution was in partial liquidation. There remains to be considered the respondent's contention that credit for the dividend declared December 3, 1937, of $40 per share on common stock, payable in five-year, four-percent debentures, is not allowable, since no proof of the market value of the debentures was offered. A glance at the record, so far as this contention is concerned, convinces us that we can not fairly consider this question. Attached to the notice of deficiency herein was a statement in explanation of the basis of the determination, as follows: In computing your surtax on undistributed profits for *182 the year 1937, no dividends paid credits have been allowed in respect to your preferred stock and to that part of your common stock which was held by the Terre Haute Foundation, Inc. It has been determined that all such payments represented capital expenditures for the purchase or redemption of such stock and that no part of the amounts so paid was properly chargeable to your earnings or profits accumulated after February 28, 1913. Accordingly, no dividend paid credits are allowable therefor under Sec. 27 (a) of the Revenue Act of 1936. Payments made to your other common stockholders have been disallowed for the reason that the distributions were preferential and are precluded from allowance under the provisions of Section 27 (g) of the Revenue Act of 1936. The petition alleged error on the part of the Commissioner in disallowing the dividends paid credit, and in assessing a surtax on undistributed profits, and set forth facts designed to show that the distributions to Terre Haute Foundation were ordinary dividends, rather than capital expenditures for the purchase or redemption of its stock, and that the distributions paid to the other stockholders were not, therefore, preferential. *183 With reference to 1937, the petitioner specifically alleged that dividends of $65 per share were declared and paid on the common stock. The respondent's answer denied substantially all of the allegations of the petition, including the allegations above referred to. At the hearing on March 31, 1943, respondent's opening statement made no reference to the issue with which we are presently concerned. A partial stipulation of facts was filed and other evidence was offered by petitioner. Respondent offered no evidence at the hearing, and at no time at the hearing before, during, or after the introduction of evidence was any indication forthcoming that respondent was contending of would contend that the distribution of December 3, 1937, should be disallowed on other grounds, even though it should be found to be an ordinary dividend. This theory made its debut in respondent's brief, filed on May 15th, and since it rested upon an alleged failure of proof, petitioner was then helpless to remedy its position. We think that rudimentary principles of equity and justice forbid our consideration of a theory advanced by the respondent in such a way and at such a time. Petitioner was not apprised *184 of the necessity of evidence of this nature at the time of the hearing. The fundamental purpose of pleadings is to inform the parties, and the Court, of the issues involved, and certainly the taxpayer is entitled to know, at least by the date of the hearing, the ground upon which the Commissioner acted and the contention which he is required to meet in order to establish the error of the determination. The respondent can not be allowed to profit by a tardy contention, made long after the testimony has been heard, of failure of proof of a fact which was not, in any practical sense, put in issue by the pleadings, and which was not germane to any theory theretofore advanced by respondent or even mentioned by respondent's counsel. Decision will be entered under Rule 50. Footnotes
*. This represents the face amount of debentures of petitioner which were distributed to its stockholders and paid by it in full in the succeeding year. Other facts in connection with these debentures are hereinafter set out in greater detail.↩